### GREAT AMERICAN INDEMNITY CO. v. LANDRY STORES, Inc., et al.

#### No. 1766.

Court of Appeal of Louisiana. First Circuit.

Dec. 9, 1937.

J. O. Broussard, of Abbeville, for appellant.

Felix J. Samson, of Abbeville, for appellees.

LE BLANC, Judge.

Plaintiff, Great American Indemnity Company, as the compensation insurance carrier for the employees of the town of Abbeville, became obligated to pay compensation insurance to an injured employee of that town in the sum of $920. In addition thereto, it paid out the sum of $30 for medical expenses, making the total amount paid by it under the policy which it had issued, $950. Availing itself of a subrogation clause contained in the policy, it has instituted this suit against Landry Stores, Incorporated, a corporation engaged in a general mercantile business in the town of Abbeville, whose employee is charged with the negligence, while acting within the course and scope of his employment, which caused the injury producing the disability of the party to whom they were obliged to pay compensation. A. O. Landry is also made a defendant on the ground, as alleged, that it was his automobile, loaned by him to Landry Stores, Inc., which was being used by the negligent employee on the day of the accident.

Plaintiff, in its petition, sets out that on June 16, 1934, Simonet Romero, the injured employee of the town of Abbeville, on his way to make pay-roll payments to other employees, was struck as he crossed State street by a Ford sedan being driven at the time by Howard Guidry, the employee of Landry Stores, Inc., and sustained the injuries which incapacitated him and for which they were obliged to pay him his compensation. It is alleged that Guidry was engaged at the time in making deliveries for his employer and that he was driving the Ford sedan at the rate of thirty miles per hour in weather which is described as a wind and rain storm, "the intensity of which prevented a radius of vision in which an automobile could be stopped and created a situation that made it unsafe for vehicles to move." It is further alleged that the Ford sedan was the property of A. O. Landry, loaned by him to Landry Stores, Inc., for the purpose of using the same in making the deliveries on the day and at the time

mentioned. Judgment is prayed for, in solido, against both defendants in the sum of $950, with legal interest from judicial demand.

The defendants filed a joint answer in which they denied practically all the allegations of the plaintiff's petition, and specially denied that at the time of the accident, Howard Guidry, driver of the Ford sedan, was engaged in the performance of any duty on behalf of his employer, Landry Stores, Inc. It is averred, on the contrary, that he was on a private mission, and using the car in direct violation of the positive instructions given him by one of his superiors. As an alternative, the defendant pleaded that if Guidry was in any way negligent as an employee of Landry Stores, Inc., through his operation of the car which was owned by A. O. Landry, that Simonet Romero, by his gross negligence, contributed to the accident and injury, and his contributory negligence is pleaded in bar of plaintiff's action as herein instituted by it. The negligence charged against Romero on the defendants' plea of contributory negligence, as set out in the answer, consisted in his having emerged from the back of another car which was coming from the opposite direction in which Guidry was driving on State street, and in running diagonally across the street with his body bent forward and the brim of his hat over his eyes, shielding his face from the rain and wind and at the same time obstructing his vision. It is charged further that he deliberately ran into the right front end of the Ford sedan and thus, by his gross negligence, produced his own injuries.

There was judgment in the lower court in favor of the defendants and against the plaintiff dismissing the suit and rejecting its demand. From that judgment the plaintiff has appealed.

The first question, and the most important to be considered, is whether or not the doctrine of respondeat superior applies, for if it does not there can be no liability on the part of the defendants. The district judge in the written reasons handed down by him dismissed the plaintiff's suit on the ground that that doctrine did not apply as the facts showed conclusively that at the time of the accident Guidry, the driver of the car, was not engaged on a mission in the service or interest of his employer. He held on the contrary, as contended by the defendants, that he had taken the car and was using it for a purely personal errand.

The testimony showed that on the morning of June 16, 1934, a storm of hurricane force was raging in Abbeville and in fact over the greater portion of Southwest Louisiana. Some of the witnesses estimate that the velocity of the wind was sixty miles per hour, and it is undisputed that the rain was pouring in torrents. All in all, we get the impression that the weather was so bad that no one would care to venture out unless forced to do so.

The testimony satisfies us that Horace Guidry, the driver of the car involved in the accident with Simonet Romero, had, earlier in the morning, made some deliveries from the defendants' store, but the storm kept growing with such intensity that he was later warned and instructed by his superior not to make or attempt to make any further deliveries. Mr. Lovic Moreland, who was in charge of the grocery department of the store through which all deliveries were made to all customers, states that Guidry made one trip, and as the weather got worse, he wanted to know if any more deliveries would be made "and" he continues in his statement: "I told him positively no, I says, I don't think any reasonable lady would expect us to deliver in this kind of weather." It is our opinion, formed from his own testimony, that Guidry became apprehensive and uneasy for his mother, and at about 11:30 o'clock, when the storm probably was at its very worst, disregarding Mr. Moreland's instructions about going out again, he took Mr. Landry's car, without the knowledge or consent of Mr. Landry or anyone else, and ventured out into the storm with the primary object of going to see about the safety of his mother and family.

Mr. Moreland's testimony regarding the instructions he gave Guidry is corroborated by that of Miss Mattie Mahout, a clerk in the grocery department of the Landry Store, and as we read his testimony, Guidry himself will not deny that they were given. He simply says that he does not remember hearing them although he does remember Mr. Moreland's remark about no reasonable customer expecting deliveries in such weather. He says that as he was about to leave the store, he picked up a basket of groceries to be delivered to Mrs. De Graauw's residence and also a package intended to be delivered to Mrs. Elue Le Blanc's, but he virtually admits that his first and foremost object in leaving the store was to go to his mother's home as he was solici-

tous of her on account of the storm. He says that he delivered the groceries at the De Graauw residence and intended delivering the Le Blanc package after his visit to his mother's. The accident he says, of course, prevented him from doing either.

There is a serious doubt about Guidry having made any delivery at the De Graauw residence and a more serious one that he had any package at all to be delivered at Mrs. Le Blanc's. All available records of the store to show deliveries made that day were produced, and it was shown that there were none intended for either place, and with regard to the Le Blanc package which he himself admits was never delivered, there appears no record whatever of what disposition was made of it. Besides, the testimony shows that after leaving the De Graauw residence, if Guidry did have a package for Mrs. Le Blanc that it would have been much shorter for him to go there directly from the De Graauw home than by taking the roundabout route which he did by going to his mother's home.

The burden was on plaintiff to show that Guidry was engaged in making those two deliveries on that morning, as that is the only way in which the defendant corporation could be held liable under the doctrine of respondeat superior. It strikes us that the testimony of the two ladies for whom the deliveries were intended would have had considerable weight on that question. The circumstances were unusual and out of the ordinary and most probably they would have remembered something about the matter. The district judge states in his written reasons that they were both available as witnesses and comments on the fact that they were not called, stating that "their testimony would have thrown much light where only darkness or shadows prevailed." In this we quite agree with him.

There is one more point we wish to comment on. Even though it be conceded that Guidry had made a delivery to the De Graauw residence, as he alone testifies, and therefore up to that time was engaged in his master's business, when he left there to go on a visit to his mother's there was a temporary departure from his duty which he admits was never resumed. The accident happened while he had deviated from the course of duty to his employer to one that was purely personal, and under such circumstances his master cannot be held liable for his negligence, conceding that he was negligent. On this point, we believe

that the following language used by our brothers of the Orleans Parish Court of Appeal in the case of Carriel v. Federal Compress & Warehouse Company, 147 So. 120, 121 is most appropriate: "In the case at bar, though the employee originally started on an errand of his employer, he departed therefrom, and, at the time of the accident, was on a personal mission. Consequently his employer cannot be held liable in damages for the effect of his negligence at a time when he was out of character as an employee and on business of his own."

We find but little in the pleadings, and nothing whatever in the testimony, on which the defendant A. O. Landry could be held liable even though it were shown that Guidry's negligence in operating the Ford sedan was the cause of Romero's injury and subsequent disability.

We are in thorough accord with the findings of the learned district judge on which he rejected the plaintiff's claim on the ground that the doctrine of respondeat superior had been unsuccessfully invoked. This, of course, makes it unnecessary for us to pass on the issues of negligence and of contributory negligence, as the driver of the car himself is not a party to the suit.

For the reasons stated, it is ordered that the judgment appealed from be affirmed, at the costs of the appellant.